*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* H. WING, Minor.

UNPUBLISHED
August 15, 2025
11:13 AM

No. 373113
Eaton Circuit Court
Family Division
LC No. 22-020759-NA

Before: K. F. KELLY, P.J., and MARIANI and ACKERMAN, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to her minor child, HW, under MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist), (g) (failure to provide proper care or custody), and (j) (reasonable likelihood of harm if the child is returned to the parent). On appeal, respondent contends that the Department of Health and Human Services (DHHS) failed to make reasonable efforts toward reunification and that the trial court clearly erred in finding that termination was in HW's best interests. We affirm.

## I. BACKGROUND

The DHHS first became involved with respondent's family in May 2022 after Child Protective Services received a complaint alleging that respondent, HW, and HW's biological father, MW,[1] were living in deplorable conditions in a home pending foreclosure. The home lacked electricity or running water, was filled with trash, and had surfaces—including HW's bed—covered in excrement from at least 19 cats. Respondent was addicted to methamphetamine and unemployed; MW was physically abusive to her; and HW was suffering from severe dental neglect, including decaying teeth and an abscess.

The DHHS established a safety plan and offered respondent a variety of services intended to allow HW to remain in her care, but respondent failed to participate in or benefit from those

_____

[1] MW was also a respondent to the petition but is not a party to this appeal.

-1-

services. In November 2022, the DHHS filed a petition seeking an order exercising jurisdiction over HW and removing the child from respondent's care. The trial court authorized the petition, took jurisdiction over HW, and removed him from respondent's care. HW was placed with MW, who was then residing with the child's paternal grandparents. Respondent was ordered to comply with and benefit from a case service plan with the primary goal of achieving and maintaining sobriety and additional goals of achieving and maintaining emotional stability, suitable housing, financial stability, and healthy relationships that were free from domestic violence. Evidence presented at subsequent review hearings demonstrated that respondent remained unwilling to participate in services and continued to use methamphetamine.

In November 2023, the DHHS filed its first supplemental petition to remove HW from MW's care and terminate respondent's parental rights. The petition cited respondent's failure to comply with or benefit from the case service plan and her continued substance abuse. It also alleged that respondent, MW, and HW were living together in a motel room and that respondent had unauthorized, unsupervised contact with HW in violation of a supervised visitation order. The court authorized the petition, placed HW with his maternal grandparents, and held a termination and best-interests hearing in January 2024. After the presentation of evidence, the trial court found statutory grounds to terminate respondent's parental rights but concluded that termination was not in HW's best interests. In reaching that conclusion, the court cited HW's bond with respondent, her parenting ability, his placement with relatives, and the fact that the DHHS had not fully explored the possibility of a guardianship. The court denied the termination petition but maintained jurisdiction over HW and continued his placement with relatives.

After the first termination hearing, respondent was arrested four times, including for retail fraud, drug possession, and traffic violations. She appeared at one supervised visit with a black eye, which was reportedly caused by a domestic violence incident involving someone other than MW. Respondent stated on seven occasions that she would attend substance-abuse treatment and was admitted to inpatient treatment in March 2024, but she left against medical advice three days later.

In May 2024, because of her continuing noncompliance with the case service plan, the DHHS filed a second supplemental petition to terminate respondent's parental rights. At the second termination and best-interests hearing, the evidence showed that respondent had minimally complied with her case service plan, continued to use methamphetamine, and refused to engage in treatment. In her testimony, respondent admitted to a methamphetamine addiction dating back to 2019 and acknowledged that it had harmed HW. She claimed to be sober and attending both Narcotics Anonymous and a domestic-violence program but provided no documentation.

At the close of the second termination hearing, the court found clear and convincing evidence supporting termination under MCL 712A.19b(3)(c)(*i*), (g), and (j). It also found that termination was in HW's best interests by a preponderance of the evidence. Respondent now appeals.

## II. DISCUSSION

### A. REUNIFICATION EFFORTS

Respondent first contends that the trial court erred in terminating her parental rights because the DHHS failed to make reasonable efforts to reunify her with HW. Respondent did not preserve this issue by "object[ing] or indicat[ing] that the services provided to [her] were somehow inadequate," *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012), so our review is for plain error affecting substantial rights, *In re Walters*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 369318); slip op at 7. That "standard requires a respondent to establish that (1) error occurred; (2) the error was plain, i.e., clear or obvious; and (3) the plain error affected their substantial rights. And the error must have seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id*. (cleaned up).

Absent aggravating circumstances, the DHHS "has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re MJC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 365616); slip op at 3 (citation omitted); see also MCL 712A.19a(2). "This means petitioner must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *In re Atchley*, 341 Mich App 332, 338-339; 990 NW2d 685 (2018) (quotation marks and citation omitted). "While the petitioner has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *Id*. at 339 (cleaned up). Accordingly, "a respondent-parent must both participate in services and demonstrate that they sufficiently benefited from the services provided." *Id*. (quotation marks and citation omitted). The termination of parental rights without reasonable efforts toward reunification—unless excused by aggravating circumstances—constitutes error warranting reversal. *MJC*, ___ Mich App at ___; slip op at 3.

Here, the trial court found that the DHHS made reasonable efforts to reunify the family, and the record supports that finding. Since first becoming involved in May 2022, the DHHS referred respondent to a range of services aimed at addressing the barriers to reunification, including inpatient and outpatient substance-abuse treatment, domestic-violence prevention programming, housing assistance, a psychological evaluation, individual counseling, and support with rehoming her cats and cleaning the home. At a March 2023 review hearing, respondent's counsel acknowledged that the services provided were appropriate and tailored to her specific needs.

The DHHS updated the case service plan five times over the course of the proceedings, and the trial court repeatedly ordered respondent to comply with and benefit from it. Nevertheless, respondent declined to participate in many of the services offered and failed to complete or benefit from the few she did attend. Her refusal to engage does not negate the DHHS's reasonable efforts to provide reunification services.

In support of her reunification-efforts challenge, respondent relies primarily on a comment the trial court made at the conclusion of the first termination hearing—namely, that "the goal is reunification, and not a lot of steps were made to reunify [respondent]." She characterizes that as an acknowledgment that the DHHS failed to expend reasonable reunification efforts. But in

context, the trial court made that observation while explaining its best-interests findings—not its evaluation of reasonable efforts:

> Now, I think this is where I think the big argument comes in, and some of the concerns come in. And again, I agree with [respondent's counsel], this was an interesting case, as far as, when we—the goal is reunification, and not a lot of steps were made to reunify [respondent]. [The DHHS caseworker] is sitting in the back, thinking, hey, I did stuff. And he did. He did referrals. He set her up with Families First. Samaritas. I mean, he did, he[] absolutely[] did. So, services were set up for [respondent] but, there also was, this other plan, that [HW] was with [MW] and if [MW] would go to the Circuit Court, and get a Custody Order, that the neglect case would go away. So, this immediate, oh my gosh, something has got to be done right now, kind of feeling, that we sometimes get in these cases, didn't seem to be there. So, that kind of explains a little bit about why we are here, and about why now, it looks like, psychological evaluations are set up . . . .

The court then denied termination *based solely on best interests* and explicitly stated that the denial was "[c]ertainly[] not because [respondent] is complying [with] or benefitting[] from services." In its written order, it also explicitly found that the DHHS had made reasonable efforts to preserve and reunify the family.

To the extent the court observed that "not a lot of steps were made," that statement does not amount to a legal finding that the DHHS failed to fulfill its duty under MCL 712A.19a(2). Reasonable efforts do not require *exhaustive* efforts. That additional services might have been available does not mean the services provided were insufficient. At both termination hearings, the trial court found that the DHHS made reasonable efforts to reunify the family, and the record supports those findings.[2]

## B. BEST INTERESTS

Respondent next challenges the trial court's finding that termination was in HW's best interests. We review a trial court's best-interests determination for clear error. *In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021). "A finding of fact is clearly erroneous if the reviewing

---

[2] On appeal, respondent asserts in passing that "[t]he reasonableness of the efforts provided affects the sufficiency of the evidence supporting the grounds for termination," but she provides no supporting authority or analysis challenging the trial court's findings on the statutory grounds. Although "[t]he adequacy of the petitioner's efforts to provide services may bear on whether there is sufficient evidence to terminate a parent's rights," we have clarified that "the requirement that reasonable efforts be made toward reunification is distinct from the requirement that at least one statutory ground for termination of parental rights be established by clear and convincing evidence." *MJC*, ___ Mich App at ___; slip op at 4-5 (alteration in original). To the extent respondent intended to challenge the statutory grounds for termination, that issue is waived by her failure to advance any argument addressing those findings. See *Mudge v Macomb County*, 458 Mich 87, 104-105; 580 NW2d 845 (1998) ("We deem the issue . . . inadequately briefed and do not reach it.").

-4-

court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id*. at 272-273 (citation omitted).

With respect to the termination of parental rights, "[t]he focus of the best-interests inquiry is on the child, not the parent." *MJC*, ___ Mich App at ___; slip op at 9. A trial court may consider various factors, including:

> the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014) (quotation marks and citation omitted).]

When a child is placed with a relative, as HW was here, the relative placement "is an explicit factor to consider" in the best-interests analysis. *In re Olive/Metts*, 297 Mich App 35, 43; 823 NW2d 144 (2012) (quotation marks and citation omitted). "The trial court's findings need not be extensive; 'brief, definite, and pertinent findings and conclusions on contested matters are sufficient.' " *MJC*, ___ Mich App at ___; slip op at 10, quoting MCR 3.977(I)(1).

In concluding that termination was in HW's best interests, the trial court considered HW's bond with respondent, placement with relatives,[3] and need for permanency, stability, and finality. The court also contemplated respondent's parenting ability, compliance with the case service plan, and the relative advantages of HW's current placement compared to respondent's home. Although the court acknowledged a strong bond between HW and respondent, it found that the bond had weakened over time. Respondent's failure to comply with her case service plan, along with the overall evidence of abuse and neglect, likewise supported termination.

The court further found that respondent could not provide HW with stability and permanency within a reasonable time, given her minimal progress throughout the case. In contrast, HW was thriving in his current placement, which provided the permanency, stability, and finality he needed. The court also found that a juvenile guardianship was not a viable alternative because HW's maternal grandparents were not willing to participate in such an arrangement.

Those findings are supported by the record, and respondent does not challenge their evidentiary basis. Instead, she argues that termination could not serve HW's need for stability and

---

[3] In her brief on appeal, respondent asserts that the trial court failed to expressly consider HW's placement with relatives before terminating her parental rights. The record does not support that claim. The trial court explicitly addressed HW's relative placement in its best-interests analysis, stating: "This is a relative placement, which does weigh against termination . . . . It bears some discussion[] that there is a lot of tension, according to the reports, between the grandparents and [respondent] . . . , but[] I will note that statutorily, certainly, this does weigh against termination." Although relative placement generally weighs against termination, it is not dispositive. *Atchley*, 341 Mich App at 347.

finality because MW's case remained ongoing, meaning HW's placement lacked long-term certainty. But the court did not clearly err in finding that termination would nonetheless provide *some* permanency and stability for HW by resolving respondent's role in the proceedings. That MW's case remained pending does not undermine the conclusion that severing respondent's rights would reduce HW's exposure to instability and ongoing emotional turmoil. Moreover, even if the trial court erred in finding that this factor weighed in favor of termination, respondent would not be entitled to relief. A child's need for permanency, stability, and finality is one of several non-dispositive factors a trial court may consider in its best-interests determination. Here, the remaining factors considered by the court, viewed together, supported its conclusion that termination was in HW's best interests.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Philip P. Mariani
/s/ Matthew S. Ackerman